AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Black Apple iPhone 11<br>Model: MHCP3LL/A<br>IMEI: 351458444209998 | )<br>)<br>)<br>)<br>)<br>)    Case No.   24-mj-08262-LR |

**FILED**

Mar 27 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ carolinalopez    DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the     Southern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date:    03/27/2024

*Judge's signature*

City and state:   El Centro, California     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone 11
                Model: MHCP3LL/A
                IMEI: 351458444209998
                Seized from Evelio Bladimir ESTEBAN-Juarez
                **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of February 28, 2024, up to and including March 14, 2024, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Device;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### INTRODUCTION

1.   I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**              Black Apple iPhone 11
              Model: MHCP3LL/A
              IMEI: 351458444209998
              Seized from Evelio Bladimir ESTEBAN-Juarez
              **(Target Device #1)**

**A-2:**              Black Apple iPhone 11
              Model: MHCP3LL/ A
              IMEI: 350559893889627
              Seized from Nelson Evilio ESTEBAN-Bravo
              **(Target Device #2)**

**A-3:**              Samsung Cellphone
              Model: Galaxy A13
              IMEI: 355120935535994
              Seized from Octavio CARRILLO-Vazquez
              **(Target Device #3) (Collectively "Target Devices")**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2.   The requested warrant relates to the investigation and prosecution of Evelio Bladimir ESTEBAN-Juarez (ESTEBAN) and Nelson Evilio ESTEBAN-Bravo (ESTEBAN-Bravo) for transportation of illegal alien Octavio CARRILLO-Vazquez (CARRILLO) (the "Material Witness") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from ESTEBAN, ESTEBAN-Bravo and the Material Witness on or about March 13, 2024, incident to the arrest of ESTEBAN, ESTEBAN-Bravo, and the Material Witness. The Target Devices are

currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.     Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents.  Dates and times are approximate.

## EXPERIENCE AND TRAINING

4.     I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5.     I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into

the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with uncharged co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with uncharged co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with uncharged co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8.     Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example,

phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.     This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

a.     tending to indicate efforts to smuggle aliens from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

c.     tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

d.     tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On March 13, 2024, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group#2 (ASU) were conducting surveillance in Calexico, California. The ASU wears plain clothes and drives unmarked Service vehicles to blend in with the public. ASU conducts surveillance and investigations on known smugglers and smuggling transportation cells operating in the Imperial Valley.

11.    On this date, at approximately 3:00 p.m., A Calexico Border Patrol Agent (BPA) observed footprints travelling north from the United States/Mexico International Boundary Fence (IBF), across Anza Road towards the Central Main Canal. The Central Main Canal flows north from this area until it meets the All-American Canal, which curves westbound and flows towards Bowker Road. This area is east of the Calexico West Port of Entry and consists of mostly agricultural terrain. At this time, ASU Agents positioned their unmarked service vehicles in the area in the hopes of observing a vehicle involved in alien smuggling.

12.    At approximately 3:40 p.m., the Remote Video Surveillance System observed one individual, later identified as Octavio CARRILLO-Vazquez (CARRILLO) emerge from the Central Main Canal and continue travelling north. As 841 observed CARRILLO begin walking north, ASU Agents, who were near the Central Main Canal, also observed CARRILLO, who was wearing all tan clothing. As CARRILLO continued travelling north, Border Patrol Agent-Intelligence (BPA-I) H. Torres observed CARRILLO crawl into a concrete irrigation lateral and attempt to conceal himself. BPA-I H. Torres informed ASU Agents that he would remain positioned in the area and keep constant visual on CARRILLO to inform ASU Agents when he exited the concrete lateral and continued travelling north.

13.    After approximately thirty minutes, BPA-I H. Torres watched as CARRILLO exited the concrete lateral and walked in a northwestern direction towards the intersection of Bowker Road and Highway 98 in the outskirts of Calexico, California. At this time, ASU Agents who were positioned near Highway 98 and Bowker Road also watched as

CARRILLO walked across Bowker Road, then north across Highway 98. ASU Agents were able to keep constant visual on CARRILLO as he walked north and hid in the front yard of a house. ASU Agents observed CARRILLO constantly on his cell phone while looking up at the street signs in a manner as if he was lost and being instructed on where to walk or describing his location to the individual that he was talking to. As CARRILLO hid in the front yard, ASU Agents positioned their unmarked service vehicle on Hoover Court and kept constant visual on the front yard where CARRILLO was hiding.

14.     After approximately thirty minutes, ASU Agents watched as a blue Toyota Corolla (Toyota) bearing California license plates slowly travelled north on Toyota Avenue then east on Hoover Court. ASU Agents observed that the Toyota was occupied by an older male driver, later identified as Evelio Bladimir ESTEBAN-Juarez (ESTEBAN-Juarez) and a young front seat passenger, later identified as Nelson Evelio ESTEBAN-Bravo (ESTEBAN-Bravo). ASU Agents watched as the Toyota slowly began travelling back westbound and came to a complete stop. As the Toyota came to a complete stop, CARRILLO emerged from the front yard and walked to the Toyota. ASU Agents watched as CARRILLO opened the rear passenger door of the Toyota and entered the rear passenger seat of the Toyota. As the Toyota travelled away from the area, record checks on the Toyota revealed that it was registered to ESTEBAN-Juarez, who resided in Holtville, California.

15.     ASU Agents kept constant visual on the Toyota as it travelled northbound and entered the parking lot of the Family Dollar store, located in Holtville, California. As the Toyota parked, ASU Agents observed a female and minor child enter the Toyota. The Toyota then exited the parking lot and began travelling northbound on Cedar Avenue.

16.     ASU Agents again kept constant visual on the Toyota as it travelled northbound to a residence in Holtville, California. As the Toyota came to a complete stop and parked at the residence, ASU Agents activated the emergency lights and sirens of their unmarked service vehicles and positioned their unmarked service vehicles behind the Toyota.  ASU Agents approached the Toyota and identified themselves a Border Patrol Agents to ESTEBAN-Juarez, ESTEBAN-Bravo, CARRILLO, and the female.

17.    ASU Agents questioned ESTEBAN-Juarez and ESTEBAN-Bravo as to their citizenship. Both ESTEBAN-Juarez and ESTEBAN-Bravo stated that they were Guatemalan citizens and were legally in the United States pending asylum hearings. BPA-I A. Tapia then questioned CARRILLO as to his citizenship. CARRILLO admitted to being a citizen of Mexico. CARRILLO stated that he made the illegal entry by climbing the border fence in an area other than through a designated Port of Entry. CARRILLO, ESTEBAN-Juarez and ESTEBAN-Bravo were placed under arrest and were transported to the Calexico Border Patrol Station for further processing. Record checks later showed that ESTEBAN-Bravo has been apprehended for alien smuggling on two prior occasions.

18.    At the Border Patrol Station, ESTEBAN-Juarez was advised of his Miranda rights, and he elected to answer questions without the presence of an attorney. ESTEBAN-Juarez stated he is a citizen of Guatemala and currently resides in Holtville.  ESTEBAN-Juarez stated he had been arrested by the police, I.C.E., and Border Patrol.  ESTEBAN-Juarez stated he had never been arrested for alien smuggling and today is his first time. ESTEBAN-Juarez stated his son, ESTEBAN-Bravo, asked to borrow his car to visit his girlfriend, but he didn't want to let him borrow it because he was arrested three years ago for alien smuggling.  ESTEBAN-Juarez stated he would drive him, and he had to go to Calexico about a job.  ESTEBAN-Juarez stated he called the person, and the person said they would not be home until tomorrow.  ESTEBAN-Juarez stated his son asked if they could give a friend a ride and the friend was going to Holtville.  ESTEBAN-Juarez stated the friend was at a house by Zapata and when he did a U-turn, the person came from the house, but he did not see from what part of the house.  ESTEBAN-Juarez stated he spoke with the person and the person said, "his boss did not pay him and did not pick him up". ESTEBAN-Juarez stated he did not know the person was an illegal.  ESTEBAN-Juarez stated they drove to the Dollar Tree in Holtville to pick up his wife and two children that he dropped off before going to Calexico.  ESTEBAN-Juarez stated the person said his boss was going to pick him up in Holtville and he had documents. ESTEBAN-Juarez stated he was arrested once he arrived at his home.

19.    At the Border Patrol Station, ESTEBAN-Bravo was advised of his Miranda rights. ESTEBAN-Bravo stated he was born in Guatemala, and currently resides in Holtville, California.  ESTEBAN-Bravo stated he entered the United States and received asylum immigration documents when he entered with his dad. ESTEBAN-Bravo stated he has been arrested on two previous occasions before for picking up illegals and one more time today. ESTEBAN-Bravo stated the reason he was arrested today is for picking up an illegal. ESTEBAN-Bravo did not want to continue with the interview and all questioning ceased.

20.    Material Witness CARRILLO stated he was born in Michoacan, Mexico, and currently resides in Morelia, Mexico.  CARRILLO stated he is a citizen of Mexico. CARRILLO stated that he does not have any legal documents allowing him to live, work or remain in the United States legally. CARRILLO stated he made arrangements with an "unknown smuggler" in his town and agreed he was going to pay around $2,000 or $3,000 US dollars to be illegally smuggled into the United States.  CARRILLO stated his destination was Los Angeles, California to work and pay for the smuggling fee.

21.    During a search incident to arrest of ESTEBAN, ESTEBAN-Bravo, and the Material Witness, Agents located three cellphones. BPA-I L. Heipt found a black Apple iPhone 11 (Target Device #1) on ESTEBAN's person and ESTEBAN claimed ownership of this cellphone.  One black Apple iPhone 11 (Target Device #2) was located on ESTEBAN-Bravo's person by BPA-I A. Botello and ESTEBAN-Bravo claimed ownership of this cellphone. BPA A. Tapia found a black Samsung Galaxy (Target Device #3) on CARRILLO's person and CARRILLO claimed ownership of this cellphone. All cellphones were seized as evidence.

22.    I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement.  In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts.  Given this,

I respectfully request permission to search the Target Devices for data beginning on February 28, 2024, up to and including March 14, 2024, the day after the arrest of ESTEBAN, ESTEBAN-Bravo, and the Material Witness.

## METHODOLOGY

23.   It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24.   Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ

1   search protocols directed exclusively to the identification and extraction of data within the
2   scope of this warrant.

3        25.    Based on the foregoing, identifying, and extracting data subject to seizure
4   pursuant to this warrant may require a range of data analysis techniques, including manual
5   review, and, consequently, may take weeks or months. The personnel conducting the
6   identification and extraction of data will complete the analysis within ninety (90) days of
7   the date the warrant is signed, absent further application to this Court.

8   **CONCLUSION**

9        26.    Based on all the facts and circumstances described above, I believe that
10   probable cause exists to conclude that ESTEBAN, ESTEBAN-Bravo and the Material
11   Witness used the Target Devices to facilitate the offense of alien smuggling. The Target
12   Devices likely were used to facilitate the offense by transmitting and storing data,
13   specifically that described in Attachment B, which constitutes evidence of violations of
14   Title 8, United States Code, Section 1324. I also believe that probable cause exists to
15   believe that evidence of illegal activity committed by ESTEBAN, ESTEBAN-Bravo, the
16   Material Witness, and others continues to exist on the Target Devices. Therefore, I
17   respectfully request that the Court issue this warrant.

19       I swear the foregoing is true and correct to the best of my knowledge and belief.

21       Fernando Quiroz Border Patrol Agent
22       United States Border Patrol

23       Attested to by the applicant in accordance with the requirements of Fed. R. Crim.
24   P. 4.1 by telephone on this 27th day of March, 2024.

26             3:21 p.m.
27   HON. LUPE RODRIGUEZ, JR.
28   UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Black Apple iPhone 11
          Model: MHCP3LL/A
          IMEI: 351458444209998
          Seized from Evelio Bladimir ESTEBAN-Juarez
          **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**               Black Apple iPhone 11
Model: MHCP3LL/ A
IMEI: 350559893889627
Seized from Nelson Evilio ESTEBAN-Bravo
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-3**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**         Samsung Cellphone
             Model: Galaxy A13
             IMEI: 355120935535994
             Seized from Octavio CARRILLO-Vazquez
             **(Target Device #3)**



The **Target Devices** are currently in the possession of the Department of Homeland
Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten
Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT B**

ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of February 28, 2024, up to and including March 14, 2024, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Device;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.